**AMERICAN AIRWAYS, Inc., v. WALLACE, Comptroller, et al.**

No. 475.

District Court, M. D. Tennessee.

March 31, 1932.

J. W. Canada and C. P. J. Mooney, both of Memphis, Tenn., for plaintiff.

L. D. Smith, Atty. Gen., of Tennessee, and Roy H. Beeler, Asst. Atty. Gen., for defendants.

Before MOORMAN, Circuit Judge, and GORE and DAWSON, District Judges.

PER CURIAM.

This is a suit in equity to enjoin defendants, who are state officials, from collecting a state gasoline tax, imposed by the Tennessee Legislature, chapter 58, Pub. Acts of 1923, amended by chapter 67, Pub. Acts of 1925, on the ground that the tax imposes a burden upon interstate commerce, in violation of the commerce clause of the Constitution of the United States, article 1, § 8.

Chapter 58, Pub. Acts of 1923, imposes a tax upon all persons, corporations, etc., engaged in and carrying on the business of "selling" gasoline and distillate in the state. Chapter 67, Pub. Acts of 1925, amends chapter 58, Pub. Acts of 1923, increases the tax, and enlarges the scope of the law so as to include "storers" and "distributors" of gasoline. It provides that "storers and distributors shall compute and pay this tax on the basis of their withdrawals or distributions" and that the tax shall accrue whether such withdrawal be for sale "or other use."

Defendant McCabe is commissioner of Finance and Taxation for Tennessee. It is his duty, as such official, to issue permits to persons, firms, corporations, etc., engaged in or carrying on the business of selling, distributing, or storing gasoline or its distillate, and engaging in such business without such permit is made a misdemeanor.

Defendant Wallace is comptroller of the state, and it is his duty to collect the tax imposed by the statutes referred to, and if it is not paid when due, he is authorized to issue distress warrants to collect same. The tax is computed upon the amount of gasoline withdrawn, and is payable monthly, on or before the 20th day of the succeeding month in which it is withdrawn. The tax is a "special privilege tax, in addition to all other taxes, for engaging in such business in this State."

The present hearing is upon plaintiff's application (266 Judicial Code, 28 USCA § 380), for a temporary injunction to enjoin the collection of taxes.

Plaintiff is a nonresident corporation, and a common carrier, engaged in the business of hauling and transporting freight, passengers, and the United States mails, by aeroplane from points outside the state of

Tennessee to cities within the state of Tennessee, and from points within the state, to points outside thereof. In carrying on its business, its planes stop at three landing fields in the state, at which points it receives and discharges freight, mail, and passengers. Gasoline is the power used to propel its planes, and they must be refueled at the above landing fields. Practically all of plaintiff's business consists of interstate commerce. It has no terminal in the state of Tennessee. However, it conducts a small intrastate transportation business, from which it derives an insignificant portion of its revenue.

It buys its gasoline in tank cars outside of the state; and brings it by railroad into the state, and stores it in private tanks, and when the gasoline is needed, it is withdrawn and put into its aeroplanes for motor fuel. It is averred that the gasoline is not, and will not, be withdrawn from storage for any other purpose whatever.

It is contended by plaintiff that the tax imposed cannot apply to it, because it is engaged in interstate commerce; and that the gasoline is an instrumentality of interstate commerce; that if the act does apply to such operations, then it is unconstitutional, because in violation of the commerce clause of the Federal Constitution.

Defendants filed their joint answers to the original and amended bills, in which they insist that the act applies to plaintiff's operations, even if it be engaged in interstate commerce, and contend that the act is not a regulation of, or burden upon, interstate commerce, or violative of the commerce clause of the Federal Constitution. They make the further contention that this suit cannot be maintained, because they say plaintiff has a plain, adequate, and specific remedy at law, by payment of the tax under protest, and suit to recover same, as provided by Tennessee statutes.

Considering the last defense first:

■ Chapter 44 of the Acts of the Tennessee Legislature in 1873 (Shannon's Code, § 1059 et seq.) provides that if a taxpayer conceives a tax claimed against him to be unjust, or illegal, or against any statute, he shall pay the same under protest and that he may, at any time within thirty days, and not longer thereafter, sue the official having collected same from him, for the recovery thereof, and same may be tried in any court having jurisdiction of the amount involved and the parties. And if it be determined that the tax was wrongfully collected, for any reason going to the merits thereof, then the court trying the case may certify that same was wrongfully paid and ought to be refunded, "and thereupon the comptroller shall issue his warrant for the same, which shall be paid in preference to other claims on the treasury." (Shannon's Code, § 1062.) Section 2 of the act (Shannon's Code, §§ 1063, 1064) provides that: "There shall be no other remedy in any case of the collection of revenue, or attempt to collect revenue illegally * * * and no writ for the prevention of the collection any revenue claimed, or to hinder and delay the collection of the same, shall in any wise issue, either injunction, supersedeas, prohibition, or any other writ or process whatever; but in all cases in which, for any reason, any person shall claim that the tax so collected was wrongfully or illegally collected, the remedy for said party shall be as above provided, and in no other manner."

This statute is constitutional. City of Nashville v. Smith, 86 Tenn. 213, 6 S. W. 273; Louisville & N. Railroad Co. v. State, 55 Tenn. (8 Heisk.) 663, et seq.

■ No one would contend that the collection of a tax may be enjoined if the taxpayer has a full and adequate remedy at law. But it is equally well settled that a court of equity has jurisdiction to enjoin the collection of a tax alleged to be illegal, where plaintiff has not a full, free, complete, and adequate remedy at law. The authorities upon this question are uniform and too numerous for collation. The Supreme Court, in Davis v. Wakelee, 156 U. S. 680, 15 S. Ct. 555, 558, 39 L. Ed. 578, cited and approved in Dawson v. Kentucky Distilleries, 255 U. S. 296, 41 S. Ct. 272, 65 L. Ed. 638, stated that a court of equity will not decline cognizance of a suit "if the remedy at law be doubtful."

■ In applying the test as to whether courts will entertain a suit in equity to enjoin the collection of a tax, the court must look to the probable consequences or damages resulting to plaintiff if the injunction is not granted. It is quite apparent that, from the facts averred in the petitions and admitted in the answers, if plaintiff is not liable for the tax, it does not have an adequate remedy at law, because the law provides for the payment of the tax monthly, on or before the 20th of each month succeeding the withdrawal, which may be paid under protest, and then the taxpayer has thirty days from date of payment, in which to bring suit for refund thereof. To force plaintiff to its remedy at law would necessarily result in a multiplicity of suits, involving much ex-

pense in such items as attorney's fees, costs, etc. There are other reasons shown in the record, which might influence us to conclude that plaintiff's remedy at law is not adequate; but from the view we take of the case, it is deemed unnecessary to comment further upon this ground of defense, as the case will be disposed of upon the proposition that the act does not impose an unlawful burden upon, or undertake to regulate, interstate commerce, in which plaintiff is engaged.

■ Chapter 67, Pub. Acts of 1925, was declared constitutional by the Supreme Court of Tennessee in the case of Foster & Creighton v. Graham, Comptroller, 154 Tenn. 512, 285 S. W. 570, 572, 47 A. L. R. 971, where it was held that the tax was an "excise" tax upon the use and consumption of gasoline, and that it was intended to reach the consumer who purchased gasoline in interstate commerce and allowed it to be withdrawn from storage for sale or "other use." In that case, Foster & Creighton, who were contractors in Tennessee, purchased their gasoline in a foreign state, transported it by railroad in tank cars, stored it in their private tanks in the state, and then withdrew it as needed, to be used as motor power in the construction of public roads in Tennessee; there it was said: "We think the act, when properly interpreted, not only applies to distributors and dealers in gasoline, but applies to consumers who purchase gasoline in interstate commerce and store it, and thereafter distribute the same, or allow the same to be withdrawn from storage whether such withdrawal be for sale or other use. It therefore necessarily follows that complainant, and all other persons, etc., in like situations, come within the provisions of said act."

Plaintiff attempts to distinguish the instant case from the Foster & Creighton Case, upon the ground that the gasoline withdrawn in the latter case was intended to, and was in fact, used in construction of public highways within the state, while it uses its gasoline in aeroplanes, engaged in interstate commerce, and that the gasoline, therefore, is an instrumentality of interstate commerce. It is uniformly held that an instrumentality of interstate commerce cannot be regulated or burdened by state taxation when the same tax would not apply to the subject of the commerce. Helson & Randolph v. Kentucky, 279 U. S. 245, 49 S. Ct. 279, 73 L. Ed. 683. It is not a regulation of or burden upon interstate commerce, for a state to impose a lawful tax upon the subject or instrumentality of commerce. Oliver Iron Co. v. Lord, 262 U. S. 172, 43 S. Ct. 526, 67 L. Ed. 929; American Mfg. Co. v. St. Louis, 250 U. S. 459, 39 S. Ct. 522, 63 L. Ed. 1084.

"A State cannot regulate foreign commerce, but it may do many things which more or less affect it. It may tax a ship or other vessel used in commerce the same as other property owned by its citizens. A State may tax the stages in which the mail is transported, but this does not regulate the conveyance of the mail any more than taxing a ship regulates commerce. And yet, in both instances, the tax on the property in some degree affects its use." Passenger Cases, 7 How. 402, 12 L. Ed. 702.

It is not the intent with which the gasoline is to be used that determines the liability for taxes, but it is the status of the gasoline at the time. Coe v. Errol, 116 U. S. 517, 6 S. Ct. 475, 29 L. Ed. 715; Heisler v. Thomas Colliery Co., 260 U. S. 245, 43 S. Ct. 83, 67 L. Ed. 237; Hope Gas Co. v. Hall, 274 U. S. 284, 47 S. Ct. 639, 71 L. Ed. 1049.

■ The statute in question does not impose a property tax upon the gasoline, but it imposes an "excise" or "privilege" tax upon the business of storing and withdrawing the gasoline and the amount is computed upon withdrawals. Compare American Mfg. Co. v. St. Louis, 250 U. S. 459, 39 S. Ct. 522, 63 L. Ed. 1084. The terms "excise" tax and "privilege" tax are synonymous, and the two are often used interchangeably. Bank of Commerce v. Senter, 149 Tenn. 569, 260 S. W. 144. Plaintiff's gasoline is brought into the state in interstate commerce, and it comes to rest in the state, where it may remain for an indefinite period, or for all time, as to that matter, thereby terminating the interstate transportation, and is, therefore, not being transported in interstate commerce when it is withdrawn, which is the time the tax accrues. The storage and withdrawal, being completed in Tennessee, is an intrastate transaction, and not a transaction in interstate commerce, and under the statutes and the authority of Foster & Creighton v. Graham, supra, it is a business subject to a "privilege" or "excise" tax. There is no doubt of the power of the state to impose a license tax in the nature of an excise or privilege tax upon the conducting of a business in the state. Clark v. Titusville, 184 U. S. 329, 22 S. Ct. 382, 46 L. Ed. 569; St. Louis v. United Railways Co., 210 U. S. 266, 28 S.

Ct. 630, 52 L. Ed. 1054; American Mfg. Co. v. St. Louis, Supra.

Plaintiff urges upon us, as controlling in this case, the case of Helson & Randolph v. Kentucky, 279 U. S. 245, 49 S. Ct. 279, 280, 73 L. Ed. 683. There was involved in that case the right of the state of Kentucky to impose a tax upon gasoline used to propel a ferry boat upon the Ohio river, plying between the states of Kentucky and Illinois. It was stipulated that 75 per cent. of the gasoline was used within the territorial boundaries of the state of Kentucky. It was held that: "While a state has power to tax property having a situs within its limits, whether employed in interstate commerce or not, it cannot interfere with interstate commerce through the imposition of a tax which is, in effect, a tax for the privilege of transacting such commerce. Adams Exp. Co. v. Ohio, 166 U. S. 185, 218, 17 S. Ct. 604, 41 L. Ed. 965."

But in the Kentucky Case, plaintiff's office and place of business, and the situs of all its property, was in the state of Illinois, and the opinion recites that all the gasoline which was used in propelling the boat was "purchased and delivered to plaintiffs in error in Illinois," so there was no property or business in Kentucky to be taxed. The receiving and discharging of persons and freight on the Kentucky side of the river was necessarily incidental to the transportation across the river. There was no property situated, or business transacted, in Kentucky upon which a tax of any kind could be imposed; therefore the tax levied by the state of Kentucky was necessarily a tax upon the use of gasoline which never had a situs in the state. If the state of Kentucky had the right to tax gasoline which was purchased in another state and used in propelling a ferry boat in interstate commerce, it could tax gasoline purchased in another state and used in motor bus or private automobiles passing through the state. There is an obvious distinction between taxing gasoline used for motor fuel in interstate commerce, and taxing the business of storing gasoline within the state, and distributing or allowing same to be withdrawn from storage for sale "or other use." This is not a tax on the gasoline, but is a tax upon the privilege of storing and distributing it within the state. Here, we have property located within the state, and used in such way as constitutes a business subjecting it to a privilege or excise tax.

We think the facts of this case fall within the principles announced in the case of

Wiggins Ferry Co. v. East St. Louis, 107 U. S. 365, 2 S. Ct. 257, 265, 27 L. Ed. 419, and cases therein cited. That was an action brought by the city of East St. Louis, Ill., against the Wiggins Ferry Company, an Illinois corporation, to recover license money imposed by an ordinance of the city. The Wiggins Ferry Company operated a ferry on the Mississippi river, between the cities of East St. Louis, in Illinois, and St. Louis, in the state of Missouri. Plaintiff was a citizen of Illinois, and the situs of its property was in that state. East St. Louis levied a license fee of $100, for each boat plying between the banks of the river. Plaintiff insisted that the city could not levy a license fee, as being in contravention of the commerce clause of the Federal Constitution. In the opinion the court said: "In the first place, the license fee is levied, not on the ferry-boat, but on the ferry-keeper. * * * The license fee exacted is, in effect, laid upon the business of keeping a ferry." See, also, Sonneborn Bros. v. Cureton, 262 U. S. 511, 43 S. Ct. 643, 67 L. Ed. 1095.

Plaintiff also urges, as controlling, the cases of United States Airways, Inc., v. Shaw et al. (D. C. W. D. Okl.) 43 F.(2d) 148, and Mid-Continental Express Corp'n v. Lujan (D. C. N. M.) 47 F.(2d) 266. We think these cases are not applicable. In the Shaw Case, the act levied an excise tax of 4 cents a gallon on all gasoline consumed in the state, and in the Lujan Case, the law imposed an excise tax upon all gasoline used or sold in the state. The Tennessee statute imposes an excise or privilege tax upon the business of storing and distributing gasoline, and this tax accrues whether the gasoline is used in interstate commerce or otherwise.

Plaintiff avers in its bill that because it is engaged in carrying the United States mails, it is an instrumentality and an agent of the federal government, and that the attempted tax is invalid and unconstitutional, because it operates directly to retard, impede, and burden the exercise by the United States government of its constitutional power in regard to the mails. This contention is not stressed in the argument. We think it is not sound in principle, and requires but brief mention here. If plaintiff is engaged in transporting the mail, it is nothing more than a private contractor with the United States government, and does not thereby become a governmental agency.

"It is apparent that not every person who uses his property or derives a profit, in his dealings with the government, may clothe

himself with immunity from taxation on the theory that either he or his property is an instrumentality of government within the meaning of the rule." Metcalf v. Mitchell, 269 U. S. 514, 46 S. Ct. 172, 174, 70 L. Ed. 384.

"* * * A State may tax the stages in which the mail is transported, but this does not regulate the conveyance of the mail any more than taxing a ship regulates commerce. And yet, in both instances, the tax on the property in some degree affects its use." Passenger Cases, 7 How. 402, 12 L. Ed. 702.

The statute in question does not impose a tax on the federal government, nor an instrumentality, or agency of the government; nor is it a burden upon or regulation of a governmental function. It is simply a privilege tax upon engaging in a business within the state, and applies to all persons, firms, or corporations doing a like business.

For the reason stated, the writ of injunction is denied.

The case of Eastern Air Transport Corporation v. South Carolina Tax Commission, 52 S. Ct. 340, 76 L. Ed. —, decided March 14, 1932, has come to our attention since the foregoing opinion was prepared, which is additional authority for the conclusions hereinabove expressed.